Ms. Clerk, please call the next case. Olsen-Einfeldt v. Steadley v. Brown v. Robert F. Peating v. Gonzon Construction, Inc. Okay, when your case is called, please approach the podium and tell the court your name and whom you represent. I don't know if you were in court earlier, but each side has 15 minutes. I would advise the appellant to reserve a few minutes for rebuttal. We've read the briefs. We've read all of the material. Justice Hoffman, who is not here today, will be participating in the resolution of this matter. He will read the materials and listen to the tapes as well. Counsel? May it please the Court, my name is Lawrence Hyman, H-Y-M-A-N, along with Cynthia Kisser. We represent the plaintiff appellant, Mr. Keating. Thank you. Good morning. My name is Paul Festenstein from the law firm of Condon & Cook. I represent 68th and Paxton, LLC. I also represent Oglesby Management Company, which is a business of two individuals and is doing business together as husband and wife. Thank you. Thank you. Mr. Hyman? May it please the Court, the two issues that we have before you, I would like to spend the majority of my time on the 2615 issue, and I would also like to reserve at least five minutes for rebuttal, if that's okay. I must say that I think, in all fairness to Judge Quinn, he is quite knowledgeable and has been sitting up there quite some time. However, I think he got it wrong here. I think that the Court seemed to be confused by some very basic language within the Workman's Compensation Act, and I believe that the lower court, the trial court, contrary to Judge Quinn's opinion, does have jurisdiction, and he has jurisdiction to determine, as a matter of law, whether or not 68th and Paxton and Oglesby are, in fact, statutory employers. And I found it sort of curious, listening to the previous argument, that we're sort of talking about statutory construction here and its definition and how the plain read of that construction is by the Court. We talk about that a lot. I know you do. I see it all the time. But I think, importantly for us, in this particular case, the plain read of the section that we have relied upon in our complaint, in our Fourth Amendment complaint, does not require, in any manner or form, the exclusive remedy that the Comp Commission, the Workman's Compensation Commission, first make a determination whether or not there is a statutory employer. We think that the way that the case, the complaint has been pled in this particular case, allows Judge Quinn, the motion judge in this case, to make a finding of the matter of law. And I think... I have a question about the process of how you picture this working out. So you would see there are lots of fact questions that would have to be resolved before the case could actually go before the jury, right? Yes. And I know that was a concern for Judge Quinn was the, quote, unquote, manageability, which was a second issue that he had. But I think... How do you envision it working? I mean, would there be a trial? Would there be... Yes, I think... Also, obviously, there are some issues about independent contractors and employees and knowingly, all those kind of... We have to have some kind of fact finding done before there would be a trial. Correct. And you're saying that fact finding should be done in the circuit court. First, you're saying that it should not be done by the juror, right? Correct. Okay, it should be done as a matter of law, but fact finding by the trial judge before the case goes to the juror. Justice Tice, just as you well know, in any trial situation, when you have requests to admit facts or a defendant that makes an admission in the pleadings, the trial court can and does direct a jury to a specific known fact that they must accept. And I think the same thing can be done here. So it wouldn't be an admission. I mean, there are debates about some of these facts, right? No, well... Whether or not the plaintiff is, in fact, an employee or if he's an independent contractor, right? That's a fact dispute that's going to be looking at. Well, but I don't think that's relevant in terms of deciding a statutory employer, whether Mr. Keating was or was not a subcontractor or an employee. I think what we have asked the court to do is to make a specific finding as a matter of law. Because this was a 2-6-15 motion, we're going to court has to take as well pled those facts. Let's say he said, you know, you're right. The way I read the statute, or we say, the way we read the statute is, this has all got to get sorted out in the circuit court. So we're going to reverse. Okay. Now, what's the next thing that happens? Now Quinn's got to decide whether or not there are, you know, there's a dispute about the facts here. Before we get to how the man fell off the porch, is he, are the defendants, in fact, statutory employers? Is he, in fact, an independent contractor or an employee? Then Quinn's got to sort that out, doesn't he? Well, no. I think what Judge Quinn would have to do, or anyone who sits in his stead, is that he has to determine and follow the factors that are set up within the Workman's Compensation Act. In other words, to be a statutory employer, you have several factors that you have to follow. First, that they either directly or indirectly engage the contractor to perform extra hazardous duties, as defined in Section 3 of the Act. Then the contractor was hired, who hired the plaintiff, was not insured under any Workman's Compensation policy of insurance. There's a statutory duty to make sure that Keating was insured or had some sort of coverage. And because of this relationship between 68th and Paxson and Ogilvie, and their failure to provide the insurance, then that goes into the knowing failure to provide it, and then the burden shifting occurs. But before then, does there also have to be a decision about whether or not the plaintiff was an employee of Ogilvie? No. I don't think you have to do that. I think the whole purpose of the statute, you sort of had a confluence on March 1st of 2007 that we don't really see in the case law, which is not only did Mr. Gonzon have no Workman's Compensation insurance, but then the owner of the property had no Workman's Compensation insurance, even though he had a business and it was presumed that he would have had some sort of insurance. So talking about remedies that the legislature has created, it's clear that what the legislature has done is said, and I think if you look closely at Section 4, there are five, six different paragraphs, but these are really all different remedies. The defense has claimed, and Judge Quinn agreed, that you have to go to the commission. But I think if you read Paragraph 1 of Section 4, as we had argued, that just goes to the commission has to make a determination for purposes of a work stoppage. So D you're talking about? D. I'm talking about, yes, 4D. Because D is not broken down into paragraphs. It makes it difficult for all of us. Yeah, I guess I simply sort of figured out just the spacing meant a separation of the paragraphs, but I think each of these is a remedy that the legislature has said needs to, for each particular type of action that's in question, such as, as I say in Paragraph 1 of Section 4D, or that first paragraph, it talks about what the commission is comprised of, but then it says that they have to get together because of the cessation of all business operations, and then they can give that order to the sheriff or a police department to go out there and force it. And then you have a provision that says, listen, if you don't have this, it's either going to be a felony or a misdemeanor. And then it goes further down and says, and if it's a felony or misdemeanor, it's either the state's attorney of the county or the attorney general can bring a criminal prosecution for that. And then when it gets to what the section we're talking about, it says employers who are subject to and knowingly fail to comply with this section shall not be entitled to the benefits of this act during the period of noncompliance, but shall be, and it says shall be liable in an action under any other applicable law in the state of Illinois. So how about later on? All proceedings under this subsection D, all proceedings under this subsection D, shall be reported on an annual basis to the Workers' Compensation Advisory Board. It's just a, it's a reporting requirement. Including in that report would have to be any case that was filed in the circuit court. That's what I believe. If this is whatever this advisory panel or advisory board is. What's your best case that supports this? You know, this seems really novel to me, what you were asking Judge Quinn to do and now asking us to do. Do you have any, tell me whether you have any case law that supports this unusual step that you're asking the court to take. There actually is a case out of, out of a different jurisdiction that we found. I don't know if it's in Utah. Is it cited anywhere? It is not cited. It's not cited in our case. I have cases within your two states. Which we found later. But I don't think, I think the whole purpose of this act, Justice Cunningham, is to ensure that there is a correction of a wrong. As all, as the legislative languages always try to do. And actually the Workers' Compensation Act is really, really a sort of a social remedy. It allows for people that are injured on a job not to have to prove the proximate cause of the injury, but it's sort of there and this is what it is and here is the value of your particular injury. But I think the legislature, and it's interesting, there really is, there was hardly any legislative discussion in the histories about this section. It's there, but it's there, we think, to correct the wrong. And this is the correction of the wrong. It may never have been, and this may be a case of first impression, it may never have been used before. But the language is there. And the language really says the court has to make, as a matter of law, determination of a step. Because why bother going back to the, the whole purpose is so you don't have to go back to the Comp Commission, the Worker's Compensation Commission, because there's no insurance there. Why bother? It gives, the legislature has cut out a particular provision that says to the circuit court, you can do this. Now, they don't tell you how they're going to do it because they've sort of dumped it on everybody. But I think if you also sort of, and you asked Justice Tice about how are we going to manage this, as the court has seen through many years of opinions, you always have in multiple defendant cases, sometimes issues of contribution, in Kotecki the issues of whether or not you have to pay, who gets paid back and when it's, when it has to be filed, all these different issues that are always sorted out by the trial court before it gets to the jury. And yes, I think that once the, a determined- Bad questions in those cases? Before cases go, the contribution case goes to the jury, bad questions are determined by the court? I think questions of law are determined. I think that's kind of, well, we kind of disagree with it. I genuinely, when I say disagree, I really want to hear your point of view. It just seems to me that there are fact questions that you're saying there have to be some determination. That's first by the trial court. Okay, so- Once the trial court- So it's not a question of law? It's a matter of law. But- On well-pled facts. If there's, I mean, just on the complaint, if the complaint says these things, then the whole case goes to the jury. Yeah, it becomes a burden shifting according to paragraph 14. But to get to the jury, all you have to do is file a complaint that says that the employer didn't have insurance. No, you would have to, I think the court, you would have to ask the court either as on a matter of summary judgment to make a finding- Facts, we're talking about facts. Right, as to the well-pled facts that are uncontroverted. So there's no controversy. Let's say there is controversy. If there's a controversy, then we never get to the issue of the burden shifting. That's where I think the statute sort of limits us. Or you could say the facts get sorted out first by the commission. And then if the commission says, after a hearing with five people, whatever it is, from the different interest groups, and they all look at this, and they end up making a finding at the due process in a hearing, they determine an employer has knowingly failed to provide coverage as required by this, then there are certain rights. And one of the remedies is now you go ahead and you try your case and let the guy fall off the porch. Except the provision of the burden shifting doesn't require the commission to hear this. I think the specific language within that subparagraph, if we want to call it, allows the circuit court to make a decision. And, again, the circuit court is going to have to make this decision on those well-pled facts. Mr. Hyman? Yes. I'm having the same problem that Justice Feist is having procedurally. How would this work procedurally? That's a problem, and we can't disregard it. No. Because generally in our system, procedurally, the fact finders are the fact finders. And you're basically saying that the court should be a fact finder before the case actually goes to the fact finder. No. I'm not putting all of that together. A suggestion certainly could be that you could send it back down and let Judge Quinn or whoever make a decision and we go to trial and we come back up here and figure it all out later. But knowing that it's not going to happen that way, I don't think that Judge Quinn or whoever sits has to make a specific determination of facts. I think the facts as pled in the complaint will allow him to make or her or whoever sits there will allow him to make a decision as to the statutory employer. Then once he decides if there's statutory employer based upon the well-pled facts, as in a motion for summary judgment, this particular case, the defense filed this 216 motion to dismiss, so Judge Quinn has to, under the law, take and it's accepted that those facts are accepted as well-pled. And those facts that we pled were those facts, factors that specifically set out what a statutory employer is. And so who decides if the employer knowingly fails to comply with the section? That, again, has to be based upon the facts as they're pled. Now, we may have to go back and amend it and do additional discovery. We're both asking the same question. I understand 2615 we're taking all the facts. Right. But maybe they're going to raise a defense that they didn't knowingly fail to comply. Who's going to decide that? Again, I think the trial court has to decide that because we as the plaintiffs. Not the judge as fact finder, but the judge as the decider of legal issues would decide that crucial factual issue. Correct. And if there are no issues of material fact that the court can find and it becomes a matter of law, then he will make the decision that there was a knowing failure to provide the insurance. And once he makes that knowing failure, then the burden. And if the court denies motion for summary judgment, now what? Then we don't have the burden shifting. We're back to the straight negligence issues. Straight negligence issues. And then, of course, then the issue before the second issue was summary judgment issue, which we believe, again, respect to Judge Quinn, is wrong. And he's wrong because there was a burden on the 6th, 8th, and Paxson and Oglesby. They knew of the hidden danger in this particular case. How was it hidden? How was it hidden? When the plaintiff says that he saw it himself. No, he didn't. He saw the nature of the. . . Well, what Mr. Keating says was that. . . Attached by screws and all of that. He said. . . He saw that. Well, he said he saw that the pickets were attached by the screws. But what was the hidden danger was it was the couplings that were attached from the railing to the wall. And no one knew that. They said the wood was rotted. That was one of the factors because it was screwed in. Normally, if it wasn't rotten wood, it wouldn't have been screwed in that way. That would have basically caused the picket and the railing to come off as one piece. But as the plaintiff himself said, you know, if somebody's having their porches replaced, it's because the porches are bad. So he's there demolishing the porch. So he's demolishing a porch that he knows needs to be demolished. I'm still trying to figure out how is that hidden. And he has no recollection of what it is that caused him to fall. Right. Even in his deposition, he couldn't recall what caused him to fall. The next thing he knew was two days later. So how are you going to prove that? That little nexus that you need to fill in as to what it was that was the proximate cause. How are you going to fill that in? The OVBs had a report from 2004. They hired an independent contractor or an investigator, not an investigator, but a company to examine his porches. There were complaints from another building. He, using that, hired Mr. Gonson, Gonson Construction, to redo the porches. Within that report that only he had, which he didn't tender to Mr. Gonson or talk to him about, was the fact that the company, this repair company or investigative company, found that the brackets that were attached to the railing itself and to the wall were improper. They had these gussets that were in improper form. So what? That's in the report. So how is that going to satisfy your approximate cause of crime? Because when Mr. Keating said because the pickets were screwed in the front and not in the back, he couldn't pull them off, he couldn't use a screwdriver. He had to lean over this railing, which he didn't strike. So what? I'm still asking so what because he doesn't know whether he fell because he was leaning over the railing or because he just had a momentary drop in blood pressure. It could be anything. He doesn't know. Well, but the hidden danger was, in fact, what was the proximate cause of this injury or proximate cause by circumstantial evidence, certainly. Circumstantially, if the condition of the railing was no good and Mr. Ogilby knew about this, but certainly not Mr. Gonson, to warn Mr. Keating. I think that we could all agree and certainly your client agrees that they knew the porch was no good. That's why they were demolishing it to put up a new porch. So everybody agrees with that. I think he also said that it's not the worst he's seen,  the owner of the building needed to replace the building. I still think you have a proximate cause problem. Well, I think the proximate cause, Justice Cunningham, can be established, certainly for purposes of the summary judgment, purposes of the summary judgment, by an inference of facts. And the inference is that there was a condition that existed that was unknown to the plaintiff, certainly unknown to Mr. Gonson. He knew they were screwed in to Rottenwood. Well, he knew the pickets were, but we're talking about the top of the railing, because if you recall, Mr. Gonson got to the scene after the accident, after they had removed him from the impalement. Mr. Hyman, that's kind of an academic distinction, because he doesn't know whether it's because of the pickets that were screwed in or because it was the top railing that caused him to fall. So it doesn't make any difference if you knew about one but not the other. You still have the same problem. For what we had to deal with and for purposes of the summary judgment, I think there was enough evidence. And certainly Mr. Shwedek, who was our expert in this case, testified that in his experience, based upon his knowledge of repair and construction business, that there was a duty on behalf of the homeowner, in this case, to provide that information to the... He's not a lawyer or a judge. No, he's not. How about his causation opinion? His causation opinion was... Isn't it a lot of this that it's assumed, assumed sounds like speculation, that the plaintiff was leaning on the railing somehow? Correct. And the way the railing gave loose? Correct. But we don't know if he was leaning on the railing. And we'll never know if he was leaning on the railing. Well, he said he leaned over to hammer at the pickets. At one point, but not when he fell. He doesn't know what he was doing when he fell. And didn't he also talk about that the way he would have... He doesn't remember what happened. But the way he would have done his job, given the way the pickets were placed, is that he would have removed the top rail first and pulled the thing down so it's on the deck and then removed the bottom rail and then pulled the whole thing off in one piece and then knocked the pickets off. So if he did it that way, there would be nothing there to prevent him from falling off the porch deck. Didn't he say that? Well, he did. But he distinguished that because in this case, he found that these pickets were in fact screwed in from the front. So as he faced them, they weren't behind the railing. They were in the front of the railing facing towards the building. So he couldn't pull them off like he would. And the other thing that there was, even the Dupinskys, the other people that were there, who were there to assist in removing the porches and repair the porches, said that Gonzon wanted them to use the wood that's available and use those pickets and board up the actual doors of the apartments so people don't come off and end up falling themselves. So this was a different... I don't understand what the effect was. If the plaintiff says that the way he would have removed the porch, given the way the porch was built, he would have taken down the top rail and then taken off the bottom rail and then knocked the pickets off and then, one could assume, then used the pickets to board up the doors, which hadn't happened yet. But why doesn't his testimony that he would have removed all the railing first, which would mean that if he fell, then it had nothing to do with the railing. Correct. But he couldn't because of the nature of the way the pickets were placed in. I think it's exactly the opposite of what you're saying. So I think that was one of the reasons why he chose not to do it that way. Are you sure that's what the record says, that he did not do it that way? He didn't... How he would normally do it? How he normally would do it would be to take down the pickets first and leave the railing there, is what he said. But because of the way this porch was done, he would remove the top rail first, pull it down so it's on the deck, and then remove the bottom rail and then pull the whole thing off in one piece and then knock the pickets off and therefore there would be nothing there to prevent him from falling off the porch deck. I know, but I think if I, and I may stand corrected based on the record, but I believe it was the only reason he didn't was because of the way the pickets were set up. That's what I think. But you don't know that. He didn't testify to that. I mean, he basically testified that what he would have done in a normal situation but in this circumstance, because of the fall or whatever it is, he doesn't have any recollection as to what he actually did. We do know that he said that if he had removed the railing in the way Justice Tice just described, then there would be nothing there. So if he did fall, there would be nothing there, and, you know, we know what happened after he fell. So you're still having, in my opinion, a proximate cause issue. You have a causation issue that I think you cannot fill that gap by speculating that if this had happened, then that would be the causation. We have to know with a little bit more. Well, as I said, I think for purposes of the summary judgment, in order to defeat that, all we need is an inference from the facts. And I think the inference from the facts of the proximate cause is that there wasn't the knowledge. The knowledge that Mr. Ogilvie had was not given to Mr. Gonson, who did not give it to Mr. Keating. But as you suggested, there's an inference, and the inference is he leaned on it and it gave way. Correct. But there's another inference out there that leaning on it had nothing to do with the way he fell, that he removed the railing himself. There's that other inference. Well, that inference is not based upon the facts in this record. I mean, that I know is what the defense has argued, I think, in this case, is that he hit, they kept saying that he hit the railing, he struck the railing, he removed the railing. He did not do that. All he said is, I leaned over to whack the picket. And when he leaned over, the next thing he did. He didn't say that's when he fell. All he says is the next thing I knew is that I'm in the hospital two days later. But he does recall that he leaned over to whack the pickets. And the whole issue of his removal of the railing is not anywhere in the record. Except where he says that, I think he says that's what he would have done. What he would have done, yes. What he would have done and what he did do. We don't know. That's the problem. It's speculation. We don't know what happened. We just don't know what happened. Should the case go to the jury when we don't know what happened? I think there are enough facts to send it to the jury. Thank you, Mr. Hyman. Good morning. Good morning. I'd like to start with Paul Festenstein again. I'm sorry, I apologize. Paul Festenstein, Condon and Cook for the appellees, 68th and Paxton, and OMC, Oglesby Management Company. The statute that we're here to discuss with respect to the 2615 motion is replete on its face with multiple repetitions that the fact finder is the commission, or the fact finder is the three-panel person appointed by the commission, one who is representing the employer, one who is representing the employee, and one who represents a neutral. Counsel is relying upon an isolated paragraph in Section 4D without reading the entire Section 4D, and he doesn't read the section correctly. Employers who are subject to and who knowingly fail to comply with this section, that phrase takes you back to the entire section. You cannot interpret that phrase without looking at the entire section of the statute. So where do you go back to? You first go back to 4A. 4A says employers must ensure their workers' compensation liability. Three different ways to do it. It's all set forth in the statute, a bond, self-insurance, a financial statement, a policy of insurance, et cetera. If you don't do that, and if you don't ensure your workers' compensation responsibility, then the commission, the three commissioners, a panel of three commissioners, with due process and after a hearing can make a finding that you knowingly violated the act and you did not have workers' compensation insurance for your people who came up on your work site. Therefore, the fact finder is the commission. The statute says it multiple times. One of the best. I was going to just point that out. I apologize. All orders, the best place was, yes. It's paragraph, and I know they're not numbered, but it's the paragraph just before paragraph D. All orders made by the commission under this section shall be subject to review by the courts in the same manner as prescribed under section 19 of the act. Then in the last sentence of that paragraph says, upon review, the circuit court shall have the power to review all questions of fact as well as of law. Therefore, the process works like this. The commissioners make the findings of fact, and then the court, when the proper procedure is followed, when the proper bond is in place, then the court can sit as a court of review on that question of fact. The entire statute has to be read as a whole. We know that. We knew that when we talked about the first case this morning, you know, the Dram Shop Act and its responsibilities set forth therein regarding social hosts. You have to read the entire statute. Counsel is misreading one paragraph of the statute. There are other places in this statute, and if you number them, if you number the unnumbered paragraphs, it would be paragraph 8. Upon a finding by the commission after reasonable notice and hearing of the knowing and willful violation, or willful failure, excuse me, of an employer to comply with any provision of paragraph A of this section. You go back to paragraph A. Paragraph A says you must ensure your workers' compensation responsibility. The statute is prolix, but it is not imprecise. It's very wordy. It's a nice turn of the phrase, counsel. I just finally got your cleverness. It's prolix. May I ask a question? Sure. Counsel, your opponent didn't direct us in oral argument to cases to support his position, but in his briefs he does talk about Skilling, I think it is, and the deal. Skilling and Schnell? Schnell. Right, but then there's the other one. Let's talk about those cases. Let me ask you some questions. Sure. It's interesting where the Supreme Court in those cases talk about, obviously the circuit courts of the state have general subject matter jurisdiction over justiciable disputes. Correct? Correct. That's what the Constitution says. Correct. And for the legislature to carve out from that constitutional authorization, the cases say that they can do that, but it has to be a very clear divestment of that jurisdiction. Right? Isn't that kind of a big idea that comes out of these cases? Skilling says that exactly. The Supreme Court says that exactly in Skilling. And so the argument is made, yeah, most of the Workman's Comp Act seems to say that. They say exclusive jurisdiction and that kind of thing. But there's some interesting things in Section D where these remedies that we all agree, this enforcement aspect that are contained in D, include some remedies in the circuit court. Correct? There's a reference to the circuit court, and there are certain remedies that are referenced, but there are conditions precedent to secure those remedies. Let me ask you this. And obviously I know you're thinking about this case and the issue of taking this case to the circuit court trial. What about the declaration that the failure to have insurance knowingly is a Class IV felony and negligently is a Class A misdemeanor? How do you think that plays out? Does the commission, according to the way you read this section, the commission has to, this hearing panel has to decide whether or not there's been a violation, and then these remedies go forward. If the state's attorney of a county brought a criminal complaint for a felony pursuant to the statute but did not, are you saying that the authority of the state's attorney is limited, that it cannot bring that action unless, first, there was a determination by a panel of the Rupert Scott commission? That's a good question. It's a good question, but the way I would approach it is that the state's attorney has the right to file that action once the appropriate findings have been made. And I believe, just like the police would investigate a crime, I believe that the investigatory power to investigate whether there's been a knowing and willful violation has been vested in the commission, in those three commissioners that we talked about. And let's take the next step, because I'm really less concerned, although I asked the question about the state's attorney, I'm more concerned about the jurisdiction of the circuit court to try the felony case. Since we understand the case is talking about divestment and all that kind of stuff. So the circuit court generally has the subject matter jurisdiction to try felony cases. But we've got it somewhere here in this idea of the workman's cop. So let's say the commissioners decide that there has been a violation of the statute. Now we go to trial. Now the circuit court has jurisdiction over this issue. What is that trial going to look like? Now obviously I ask these hard questions to which there are no answers, and I don't know, only because those kinds of remedies, the felony remedies, are right in this section D here, right before the language here about going to the circuit court to try the negligence action. And I'm just wondering how the legislature created this and how those different pieces work together. Well, I go back to one phrase in the statute, and the phrase says, with due process. And I looked at that phrase and said, what does that mean? Because how do you tie that in with the potential for a criminal penalty in this statute? A felony, which is a serious crime. And my thought is that the legislature has made, by the wording of the statute, has intended that this to be a very serious offense. And therefore, that if you're going to defend this at the commission level, you may want to have a criminal attorney at your side, because you are required. Wait, wait, wait. The commission can't decide whether a son is guilty of a felony. But there's this question of due process. And built into that question of due process is to whether or not the findings of the commission, what's the standard of review when it gets to the circuit court on those findings that are made by the commission? Is it going to be a presumption that those findings are correct and those presumptions can be rebutted? Okay? I mean, it's very difficult. Criminal case? Possible doubt? I mean, it's problematic. I think that that's your opponent's point. This is really uncharted waters. And the peculiar facts of this case is the case, he believes, that requires the circuit court to be the venue for determining these issues. That's his point. You know, there's no procedural precedent for resolving these questions. And as you can see from the questions that Justice Tice asked, these are hard questions. And procedurally, how would this work? And Mr. Hyman is saying, procedurally, this would work by submitting this all to the circuit court. Of course, that's, you know, you say something different. But I think that that's the point. And he is essentially asking us to make this leap of faith, if you will, with him, to find a procedural resolution to this very novel question. I believe the procedural resolution is in the statute. The statute is clear about how to procedurally go forward. Is it perfect? No, it's not perfect. However, Justice Tice asked the question, or Justice Cunningham, you may have asked the question, is there a case that talks about this? In the motion to strike, we cited a case that talks about Section 4D. It's in the record. The site of the case is Eisenberg versus the Industrial Commission. In that case, it's the only known case. It's at 337 Illinois Ave. 3rd, 373. It's the only known case where Section 4D has been ruled upon. And the court, the appellate court for the First District, Second Division, found that the commission followed the proper procedures in making the findings as to whether or not the defendant in that case was an employer and imposed civil penalties upon that employer. Okay? We did not cite the case in our appellee's brief. Faux pas. Faux pas. It's your key case and you didn't put it in the brief. It's not in the appellee's brief, but it's in the record. Okay. And this court can uphold the trial court on what is in the record. On any basis. But, you know, Mr. Fentonstein, it really helps us if you point us in the direction of your strongest argument. I think you can tell that we have read the materials. Absolutely. But it's helpful to you. Pardon? Absolutely. But to your ‑‑ it's helpful to your case if you highlight for us those resources that you think will really buttress your argument. So, you know, I ‑‑ I believe that it was an old ‑‑ Just a comment. Just a comment. We found Eisenberg. We do our own research. No, I understand you don't. We know about this case. I understand you don't. It is just sort of interesting that it's your key case and it wasn't. Well, it's a key case only in the sense that it's the only case that deals with the statute. However ‑‑ It says the commission has authority after notice of the hearing to determine whether a charged party is an employer and impose civil penalties upon an employer. So the argument in response could be, well, it doesn't talk about the precise provision that we're talking about. However, but it does stand for the proposition that the court has looked at, the appellate court has looked at this statute, and it does understand that the fact finder is the commissioner, are those three commissioners, and they did their job right and they followed the language in the statute. Now, our argument in the appellate's brief is more basic. Our argument is the statute on its face without even going to the case law is clear and it shows what the procedure is, and that's the only way it's the doctrine of primary jurisdiction, which Skilling talks about. It's the only way to make this statute work, is to invoke that doctrine of primary jurisdiction. An agency created by the state to deal with questions of employee‑employer relations. That's the Illinois Industrial Commission. That's what the Supreme Court says in Burke. That agency was created to deal with these issues, and under the Skilling case, that agency must be given, it's not due deference, but it must be given great deference. I forget the exact expression, but their decisions must be given wide berth. I believe that is the term. Wide berth. When the circuit court does obtain jurisdiction, eventually. There is no concurrent jurisdiction here for the purpose of fact finding. There is only primary jurisdiction in the industrial commissioners who are selected pursuant to the first paragraph of 4D. If we switch to the summary judgment issue, there is no nexus. The key word that the justices referred to during Palin's argument is nexus. We cited four cases, including Kimbrough. Kimbrough is the first case. And then we cited four cases in our brief, each of them that talk about nexus between the way the plaintiff was injured and some negligence on the part of the defendant. And in this case, as this court has already pointed out, there is no nexus. There is no proof that Mr. Keating was leaning against that railing. The only proof, and it's at page 142 of his testimony, when I asked him the question, or when he volunteered in response to a question that I had earlier asked, and then I remember hitting a rail, and that's all I remember. He didn't say hitting a picket. He said hitting a rail. And he changed his testimony when co-defendant's attorney explained to him that the pickets were on the inside. It took us a while to establish that fact in the deposition, that the pickets were on the inside, and therefore he said, well, if the pickets were on the inside, I'm wrong. I'm changing my testimony. This is the way I would do it. What did he say? He said he would hit the railing and he would pull it towards him. And his last act that he remembers is hitting that railing. That's what he admitted. And then he doesn't know what happened after that. And what the plaintiff and what the plaintiff's expert is asking this court to do is to speculate on what happened after he hit that railing because no one knows. No one knows if he tripped over the railing that he pulled towards himself. No one knows if he slipped on the wet deck. No one knows if he had a heart attack and fell over. No one knows. And the court is being asked to speculate when there are no facts from which to speculate. There are no facts to infer that Mr. Keating's body was against that railing. The facts are actually the opposite. If you're striking the railing with his hammer, then the inference is that you're not leaning on the railing. Because if you lean on a railing and you strike it at the same time and that railing is your only support for... Justice Stein, I think we agree that the record doesn't say exactly what he remembered or what happened and how he fell. I think that it's clear. What I'd like you to do is bring your remarks to a close. Okay. Thank you. I believe that on the summary judgment that Judge Quinn was absolutely correct in his ruling, and I believe that on the 2615 that the statute shows, if you read it in its entirety, that the commission is the fact finder. Thank you. Thank you. Thank you for your time. Mr. Hyman, brief rebuttal, please. Your Honor, may I ask Ms. Kischer to provide... Certainly. Good morning, Mr. Court, counsel. I want to briefly hit on two issues here. First of all, I want to go to the proximate cause issue because I believe there is a confusion of the facts here with all due respect. The testimony of Mr. Keating as to how he would take the rail down was in regard to when demolition had begun. This was not demolition. They were up there salvaging pickets to board up the doors before they began to actually demolish the whole porch. That whole rendition that counsel has continuously discussed at the trial court level in the briefs, if you go back and read it carefully, and I realize there's a lot here to read, he is talking about how he would do it once they actually began to tear the whole porch down. You've really got to help me because guess what? You really have read it. Oh, I'm sure, but I think it's... And this is how I read it. And this is how I read the testimony. So I want to show you, you tell me exactly what page in the record that you want me to read because my reading of the record is, he said, when he... What page are you on, please? Which way the pickets were, he said, given the way the pickets were, what he would do is remove the top rail first, pull the whole thing down, et cetera. That's my reading of the record. Show me what page you want me to read instead of that. And I believe that's in that same section. What page were you just reading from? I'm sorry, I don't have it all back in front of me. Okay. I'm asking you. And I'm afraid I don't have that page marked up here. It's the page, I thought it was on 176, but I'm not finding that quickly here. But it's where they began the discussion of the photograph. And the photograph is of the first floor. Okay. He wasn't on that floor. He was on the third floor. And that discussion is, how would you normally take a railing in for demolition? All right? And what we had here is, if you go back and look at what the Drapinski said and what Keating said, he was up there trying to take some pickets off to board up the door before they began the demolition. And the only reason he wasn't whacking them out was because of the way that they were constructed. Instead, he said, you took down the whole railing. No, he doesn't say that. He says, I would take down the whole railing if we were doing the demolition. We weren't at the demolition yet. We were boarding up doors and we were scavenging wood. So he says, I was up there doing that. The section about how he never touched the railing. No, he says this, but I don't understand the pickets and the doors. And I'm going to explain that. Because he says, what he would do, given the way that it was constructed, is he'd take down the top rail, take down the bottom rail, and then knock off pickets, which I assume then could be used to board up the doors. No, they board up the doors first. See, that's the thing. Here's what happens is, before they start tearing the porch down, they don't want somebody walking out with no porch deck there. So they normally use new wood to board up the doors, but they didn't have new wood here. So they're taking pickets. So Mr. Gonson said, take pickets. So they're looking for pickets that are in good shape, knocking them off. They haven't even touched the railings. They haven't even touched the support structures that are weak, that have the hidden danger in them. And what they're doing is they're boarding up the doors. And the Dubinskys are leaning this way, taking the pickets they're being given, and they're boarding the doors. And he's continuing to find more pickets. There's testimony here that what he was doing was taking the pickets out before he fell. He was taking pickets off of the existing structure. Nothing had been taken down. No demolition had started. There's nothing in the record we're going to find that he says that he took that he – no, it's the other way because I don't want to make a speculation. Evidence is going to be that he said, I took down the pickets while the railings were still intact. He's going to say, I went up to take off pickets to board the doors. That's what he's saying. He never mentions that he took down railings. And that section we're talking about is a discussion of how you would take down the whole unit. How we get the pickets. But my question is, why does that matter? Here's why it matters. Here's why it matters. We know that the brackets, if we take the report as true that the structures and columns are not properly attached to the roof, the ceiling, and the railings, that they're weak there. He's up there. He's only interested in pickets. That's all he's there for at that point. He's knocking on a picket. Now, we don't know whether the railing fell off before he fell or after he fell. But he lost his balance at some point. At some point, in order for the railing to get down to the ground where he is with him, he had to make some body contact with it. So he either fell against it at some point before he fell or after he fell. But at some point, that railing went down on its own in one piece. He went down also. So what if he hit the picket? Because the picket. What if he hit the picket? You say he was hitting the pickets. Yes. He hit the pickets. And as you say, we don't know. Maybe the railing fell at the same time. But the railing, yes. And that's the problem. How did that cause his injury? Here's how. Because if the railing had been up to code, it wouldn't have fallen. Even if he hit it with a hammer? Yes. Because the testimony is both in the statute, the code that you take judicial notice of. I'll say 200 pounds. And he's 180 pounds and he takes a hammer and he goes, boom. That's not 200 pounds of thrust weight. Is that in the record? 200 pounds of thrust weight. Is that in the record? Yes. Mr. Chudik's affidavit explains 200 pounds of thrust weight is no weight here, all the weight up and over. So the full 200 pounds hits the rail. When he's standing here and whacking, the load is on his feet. He's not putting 200 pounds there. So in order for that rail to detach just by hitting a picket, it would have to be below code. And it's below code because the brackets that are attaching it are deficient, and that's the hidden danger. Now, the circumstantial evidence is that he was only removing pickets before he fell. The circumstantial evidence is that that was what was left down there at the end was a railing that was not broken. And the circumstantial evidence is that Mr. Gonson looked at it and said, yes, the brackets pulled loose from the support post. That's the very hidden danger that we had. So I think that that's enough for summary judgment. The inference that it was the brackets that gave loose from the support post, and that's why the railing detached, because Mr. Gonson is qualified to give that opinion. Tell me about duty. Yes. He's hired to remove a porch. And as he clearly says, they don't hire me to take on good ones. Right. And he saw that the posts and railings were attached with screws rather than nails, likely because of the rotten condition of the wood. The pickets were attached with screws, not the railings. He never made a comment on how the railings were. It's the pickets. Posts and railings. He didn't say that. He says the posts and railings? I don't have the entire. The pickets are what is the problem, because normally you knock the pickets out. And what he says is that the pickets were screwed in and the screws were stripped. So he couldn't unscrew them, so he had to hit them. So the duty is, is that there was this problem with the support columns and posts. Nobody other than the OVBs knew it. The tenants didn't know it. They hadn't complained. We don't care about the tenants. We care about the plan. Right. Mr. Gonson didn't know it, and he's the contractor. Mr. Keating didn't know it. All he observed was that there had been patching in places. That's the only basis Mr. Keating gives for believing that the porch needed to be repaired. There was patching in places. That's not fracking. So he didn't know anything about the rotten wood. No. Not about the brackets. It's not about the brackets. That's what we're talking about. The brackets were not properly supporting the columns and the posts to the railings, the roof, and the ceiling. It's the hidden danger of the brackets, and immediately when probably he's putting the pressure on the pickets. How do you know that it's the brackets that caused this injury? Because Mr. Gonson, who is a qualified 14-year contractor with a Class E license, looked at it when it was on the ground and said the brackets pulled loose. It's in the brief. It's in the depths. He physically looked at it. Wait a minute. Mr. Gonson was not qualified as an expert in this case. He was the subcontractor who was hired to demolish the porch. Right. And I'm sure he has lots of experience, and this is what he does, so he knows porches better than I do. But he wasn't in the case as an expert. No, he was not. So the fact that he may have made this spontaneous comment, I mean, what are we supposed to do with that? He is a fact witness, and he observed that the brackets had pulled loose. He's entitled to give that opinion as a fact witness. We cite to a case that says the construction worker can give his opinion as to what happened in terms of what he saw. This is what Mr. Gonson saw, that the brackets had pulled loose. That's the same problem as the hidden danger. And just before I leave this point, I just want to say that's enough to surmount summary judgment. We're entitled to any reasonable inference that can be drawn. There may be other inferences that can be drawn that are not favorable, but we're entitled to that inference. One other question, Ms. Kisser. You argue about the failure to provide warnings. If something is open and obvious, is there a duty to provide a warning about, you know, an open and obvious defect or issue that, you know, that later causes a problem? Is there a duty to provide a warning in that situation? Well, obviously, there are some exceptions to the distraction and deliberate encounter exception, but what we're arguing here is this was a hidden danger. It's not obvious. Excuse me. Did you answer the question? Yes. If it's open and obvious. There are some exceptions. I didn't say other exceptions. Yes. That was my question. Well, no, her question was is there a duty. Well, you agree. If a danger is open and obvious, there is no duty to warn. Under certain circumstances, there is. And that is the... Can you answer my question? Yes, that is the answer. Yes. No. There is a duty... If the defect is open and obvious, is there a duty to warn? Yes or no. Under some circumstances, yes, which is the distraction and the deliberate encounter. What is the rule? Tell me the rule. The rule... Can you tell me what the rule is? Yes. The rule is there's no duty to warn when it's open and obvious. Okay. That's all you had to say. Yes. But there are exceptions. But in our case... We don't have exceptions. We're saying this is hidden. Who knew of it? Who knew that the support post could be pushed over because they were not properly supported? Your opponent's argument is that they knew that the porch was a mess. True. That's why they were tearing it down. True. And that's why they were demolishing it. So lots of things can happen when you have a porch... That's true. ...that is of such a condition of disrepair that needs to be removed and replaced. And that's their argument. Yes, I agree. So they are arguing there was no duty. This was a person who was experienced in demolishing porches, and this porch was a mess, and he knew it. Yes. So to the extent that he wasn't that something happened when nobody knows what that something is, they're saying there was no duty, there's no proximate cause. I mean, those are issues that you have to give us something... And I believe I have. I believe I've given you the hidden danger of the brackets, which were not obvious to anyone except for Mr. Ogilvie, who kept his mouth shut. Okay. And then I believe I've given you the proximate cause. So how do you... You don't really know whether that's what caused Mr. Keating to fall. Nobody knows. Mr. Keating could have had a momentary drop in blood pressure... Yes. ...or a heart attack, is the count. He could have slipped on the sleeve. We don't know. But the point is, the railing didn't hold, and he was between the railing. The railing is here. His feet are on the ground. At some point, his feet left the ground, and he ends up on the ground with the railing. He had to go through the railing, and he didn't break it. So the railing detached. The railing under the code should have been able to withstand him hitting it, and it didn't. So that's the circumstantial evidence, plus the testimony of Mr. Gonson, who is qualified to give eyewitness testimony as to what he sees as far as the condition, and I believe the affidavit. And I believe that's enough for summary judgment to defeat it. I do want to go on to the other matter for just a moment. Very briefly, because you... Yes, I understand. I understand. I know there's confusion on how this all would play out in the trial court, and it's very simple and very clear. If you got past your duty pleading requirement by pleading well-fed facts, the burden is then on you as the plaintiff to be able to, as a matter of law, establish that there are statutory employees. If you can't do that by summary judgment by the eve of trial, you're not going to get that burden-shifting jury instruction at trial. It's like spoliation or something like that. There's something that you need to establish. So... So if there are any facts in dispute... Yes. ...about the employer willfully not having insurance, if there are any facts in dispute, that's the end of the question, and the burden-shifting does not exist. It doesn't exist in the courtroom. That's right. When I go to Stephen... So you come in and you say, here are our facts. There should be burden-shifting. And they come in and say, here are our facts. There should not be burden-shifting. Right. As long as they show that there are some facts to dispute your issues about employee and employer, then there's no burden-shifting. It has to be bona fide facts. If they have bona fide facts that create an issue of material facts... Then those facts are never going to be resolved. ...then it's not an issue of law, is it, because there's an issue of facts. So that issue is never going to get resolved. It's never going to get to the jury. I mean, the burden-shifting will never apply in the courthouse. In other words, our burden is to plead, i.e., get past the 615, and prove by evidentiary facts. If we can't get a finding of law before we start the trial, based on uncontested facts, then we don't get to use that burden-shifting. I don't see it in the statute. Why does the statute then create for all the other remedies? I understand that the way the statute is set up doesn't specifically say that these apply to me. But the statute seems to be a mechanism for resolving facts. You're saying, under your theory, some facts will never be resolved. Well, you just lose that burden-shifting right because you didn't use the statute. Because you can't resolve the facts. That's right. We don't know what happened, so because we don't know what happened, therefore, we're going to have a trial that's not burden-shifting. But the statute gives us a way for facts to get resolved. By the commission. That's the whole idea. But we can let... Yes, it does. They come forward with their evidence. But it lets us elect. May I ask a second comment? You come forward with your evidence, they come forward with their evidence, and somebody makes a decision. That's usually how it is. But we have an option. It says you can either go to a separate court or you can come to the commission, take your choice because the employer has been bad and did not do what he or she should have done and they're worse for the protections. No, we don't know that. We don't know how that... Somebody's got to make a decision. Well, your position is... Somebody's got to make a decision or maybe nobody ever makes it. But what I'm saying is you're asserting that the employer has been bad, so you can elect your remedies. Now, you take your risk by going to civil court because if you can't prove it before the eve of trial so that you can get that burden-shifting instruction, then you're not going to get what you need. And I do want to say it's not willful violation. It's knowing violation. And there is a difference there because willful would be willful in one, requiring intent. Knowingly violates is a different standard, closer to negligence. So I just want to point that out there as well, that there is not intent required here. It is knowledge, not intent. The criminal ones... I mean, you can have constructive knowledge, but you can't have constructive intent. So if they had meant intent, they would have said intent. It's knowledge. Anyway. And so I appreciate the fact that you've given me the time on the rebuttal on that. Are there any other questions that I can answer for you? Thank you very much. Thank you. Thank you. Thank you for the spirited argument. This matter will be taken under advisement. This Court is adjourned. Thank you.